UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:05-CR-167 PS |
| | ) | |
| | ) | |
| CHADD LAMARR MITCHELL | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Chadd Lamarr Mitchell's Motion to Suppress [Doc. 19].  Mitchell seeks to suppress evidence (including narcotics, a scale and baggies) that were found when Hammond Police detectives ("HPD") executed a search warrant at the second floor apartment at 4706 Towle Ave, Hammond, Indiana.  Mitchell argues that the warrant was invalid because it was not supported by probable cause.  We disagree and Mitchell's Motion to Suppress is DENIED.

### FACTUAL BACKGROUND

On September 25, 2005, Hammond City Court Judge Jeffrey B. Harkin issued a search warrant for the residence of 4706 Towle Ave, 2nd floor, Hammond, Indiana.  The search warrant was based on an affidavit provided by Detective D. Thompson of the Hammond Police Department.  Detective Thompson obtained the warrant in his capacity as a Narcotics Investigator at the Hammond Police Department.

The affidavit made the following observations pertinent to our discussion here.  On August 22, 2005, HPD received an anonymous phone tip from a cab driver.  The driver informed police that he picked up two white males who were approximately 20-25 years of age from the Amoco docks and drove them to 4706 Towle Avenue.  Once there, the white males went inside

4706 Towle while a black male came outside, looked around and went back into the residence. The two white males then came back out to the cab and had the driver take them to a gas station where they purchased a yellow rose in a tube and brillo pads. After they completed their purchase, they had the driver return them to the Amoco docks. The affidavit also stated that Detective Thompson understood from experience that flower tubes like those purchased by the white males can be used together with the wire mesh of the brillo pad to smoke crack cocaine.

According to the affidavit, HPD received another phone tip about 4706 Towle on August 24, 2005. This time, an anonymous female informed HPD that Chadd Mitchell was selling crack cocaine out of the second floor at 4706 Towle. She identified a white female named Sarah Keil as the renter of the apartment. She also stated that there is traffic through the apartment day and night and that Chadd Mitchell drives a maroon Buick or Oldsmobile.

HPD received yet another phone tip regarding 4706 Towle on September 14, 2005. This time, the caller stated that subjects were dealing drugs all hours of the day and night with heavy traffic after 10:00 p.m. and on the weekends. The caller also stated that deals were made to cars on the street.

On September 21, 2005, HPD set up a controlled purchase of drugs from the location in question by using a confidential informant (the "CI"). Detective Thompson, the affiant, provided surveillance as part of the buy. At approximately 10:55 a.m., Detective Berdine drove the CI to a safe location and had him call Mitchell's cell phone at 219-310-6739. The affidavit does not indicate how the detective obtained Mitchell's cell phone number. Detectives Berdine and Pinarski recorded the phone conversation between the CI and Mitchell. During the conversation, the CI asked Mitchell if he had any "G," slang for a $60 bag of crack cocaine.

2

Mitchell said yes. At 11:06, Detective Berdine drove the CI to a location near 4706 Towle. Once there, five detectives (including Detective Thompson) set up surveillance in the area. Detective Berdine gave the CI $60 in cash and a listening device. The CI then exited Detective Berdine's vehicle and walked north down the west alley behind 4706 Towle. The detectives observed the CI walk east on Chicago Avenue to Towle at which point he turned south and walked to 4706 Towle. Upon arriving at 4706 Towle, the CI walked inside and up a set of stairs to the second floor. Mitchell answered the door. The CI went into the apartment and sat on the couch. While there, he saw a white female who was identified as Mitchell's girlfriend. Mitchell handed the CI a bag of crack and confirmed that it was the "G." The CI then exited the building and was observed by HPD retracing his steps up Towle to Chicago Avenue and then through the west alley to Detective Berdine's car.

Detective Berdine drove the CI back to a safe location where he retrieved the crack and the listening devices. A field test confirmed that the item purchased was crack cocaine. Detective Berdine also showed the CI a photo of a black male and the CI confirmed that it was the individual who sold him the crack. The photo was of Chadd Lamarr Mitchell.

Finally Detective Thompson described the area to be searched as follows:

> Address: 4706 Towle Ave. 2nd floor.
>
> Physical Description: Two-story white building with black trim.
> Wood stairs in rear to both levels of house.

(Gov. Ex. A at 5). The affidavit also contains a legal description of the property.

## DISCUSSION

Mitchell argues that the information contained in Detective Thompson's affidavit supporting the warrant issued by Hammond City Court Judge Jeffrey Harkin was insufficient to establish probable cause. Specifically, Mitchell claims that (1) the affidavit did not contain facts to demonstrate that adequate controls were used during the undercover purchase; and (2) that the search warrant did not describe the pace to be searched with sufficient particularity because it did not state the specific apartment to be searched.[1]

Prior to addressing the substance of Mitchell's motion, the Court must first address whether Mitchell was entitled to an evidentiary hearing on his Motion to Suppress. We find that he is not. Mitchell has not made a *prima facie* showing of a factual dispute, which is the purpose of an evidentiary hearing. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("Because the purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes."). Indeed, when challenging whether a search warrant is supported by probable cause, the Court must simply review the warrant and make a determination of whether the affidavit in support of the warrant establishes probable cause. *See United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) ("When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit."). Because Mitchell did not identify any factual disputes that would necessitate an evidentiary hearing, we rule on his motion to suppress without conducting an evidentiary hearing.

---

[1] Mitchell also mentions in passing that the affidavit was "false and misleading" in his motion to suppress. However, Mitchell does not develop this argument in any way and it is therefore forfeited.

I.       Validity of the Warrant

Mitchell argues that the search warrant issued by the Hammond City Court is invalid for two reasons.  First, he argues that it is not supported by probable cause.  Second, he argues that the warrant does not specify the particular area to be searched.  We take each argument in turn.

A.      Probable Cause

Mitchell first argues that Detective Thompson's affidavit does not contain facts to demonstrate that the controlled buy was proper because it does not appear that HPD searched the CI before and after the buy.  However, HPD had many other monitoring methods in place during the buy.  As such, Mitchell's argument is not persuasive.

When, as in this case, the affidavit is the only source of probable cause presented to the judge for a search warrant, "the validity of the warrant rests solely on the strength of the affidavit."  *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003).  Probable cause exists when "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime."  *Id*. at 756; *see also United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006).  This Court, when reviewing the judge's finding of probable cause in the affidavit, accords the judge "great deference."  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  Under this standard, this Court will only assess whether the judge had a "'substantial basis for . . . conclud[ing]' that probable cause existed."  *Id.* at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

In this case, considering the totality of the circumstances, Det. Thompson's affidavit clearly establishes probable cause that a search of the second floor apartment at 4706 Towle would reveal evidence of a crime – particularly of the presence of narcotics.  The affidavit

5

contained three separate tips that drugs were being sold at 4706 Towle. One of those three tips even named the defendant and demonstrated that he lived in the second floor apartment. Those tips were then corroborated by the controlled buy made at the direction of HPD. HPD took numerous measures to monitor the controlled buy. First, HPD transported the CI to the area. HPD then monitored the CI's phone conversation with Mitchell setting up the buy. During this conversation, Mitchell confirmed that he had the "G," a $60 bag of crack cocaine. After the conversation, HPD provided the CI with $60 to purchase the crack and monitored the CI during his entire walk to the residence. HPD also monitored the actual buy via a listening device. The entire transaction took only three minutes. Once the CI left 4706 Towle, HPD again monitored the CI during his walk back to Detective Berdine's vehicle. Detective Berdine then drove the CI back to a safe location where he retrieved the crack and the listening devices and the CI identified Mitchell as the man who sold him the crack.

Nevertheless, Mitchell argues that HPD still did not adequately supervise the controlled buy because they did not search the CI before or after the buy. Mitchell cites several cases in support of this argument. *See United States v. Span*, 170 F.3d 798, 800 (7th Cir. 1999); *United States v. McKinney*, 143 F.3d 325 (7th Cir. 1998); *United States v. Singleton*, 125 F.3d 1097 (7th Cir. 1997); *Cary v. Duckworth*, 738 F.2d 875 (7th Cir. 1984). However, as the government correctly notes, none of these cases establish a bright-line rule which requires the police to conduct a search or pat-down of a CI as an element of a controlled buy. Rather, the absence of controls is merely a factor that goes into the probable cause calculus.

In fact, only one of the cases, *McKinney*, even deals with whether an affidavit containing information about a controlled buy could support a finding of probable cause and the issuance of

a search warrant.[2]  In that case, the police conducted three controlled buys to corroborate information from a confidential informant.  *McKinney*, 143 F.3d at 327.  Each time, the police performed a pat-down of the buyer before and after the controlled buy, but did not perform a full search and did not use any monitoring devices (such as video or audio surveillance).  *Id*.  The Seventh Circuit held that the controlled buys (taken together with the informant's information) was sufficient to establish probable cause.  *Id* at 329.  In so holding, the Seventh Circuit noted that "while police can always do more to boost reliability, a probable cause determination does not require the same amount of certainty as a guilty verdict."  *Id*.

The Seventh Circuit recently reaffirmed this view in *United States v. Sidwell*, 440 F.3d 865 (7th Cir. 2006).  In that case, the police officers conducted a controlled buy using a confidential informant.  While the police did search the informant both before and after the buy, the police did not monitor the informant during the actual purchase of drugs inside the defendant's apartment.  Sidwell argued that the defendant could have purchased drugs from

---

[2]*Singleton*, 125 F.3d 1097, describes controlled buys where the police searched the informant prior to and after the transaction.  *Id*. at 1100-1101.  However, the holding of *Singleton* pertains to the location and timeliness of the buys, not the propriety of the control measures.  *Id*. at 1102.  Similarly, *Carey*, 738 F.2d 875, describes controlled buy methodology as background, but there is no analysis about the buy methodology because the appeal centers around *Brady* issues.  *Id*. at 876-77.  Finally, in *Span*, again the opinion describes controlled buy methodology which included pre- and post-buy searches of the informant, but the legal issues resolved in that appeal had nothing to do with the controlled buy or the sufficiency of the search warrant (instead it pertained to jury instructions, cross-examination, and sentence calculation). *Id*. at 800-804.

Mitchell also cites to a number of cases in the Indiana state courts including, *Iddings v. State*, 772 N.E.2d 1006 (Ind. App. 2002), *Methene v. Indiana*, 720 N.E.2d 384 (Ind. App. 1999), and *Flaherty v. Indiana*, 443 N.E.2d 340 (Ind. App. 1982).  Like the federal cases, these decisions discuss various methodologies for proper controlled buys, but none of these cases suggest that without a pre- and post-buy search of the CI, the controlled buy is *per se* insufficient.

anyone inside the building. *Id*. at 869. The Seventh Circuit rejected the argument finding that while the scenario was "theoretically possible," it did not negate the existence of probable cause because "probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty." *Id*.

In this case, the lack of information in the affidavit regarding whether or not the CI was searched before and after the buy does not render the warrant faulty. The totality of the circumstances reveals that HPD had received three separate citizen tips about drug dealing at 4706 Towle and one of those tips specifically identified the defendant, his girlfriend, and the location of the dealing as the second floor apartment. HPD confirmed this information by making a controlled buy. At the onset of the controlled buy, the HPD monitored a phone call between the CI and Mitchell during which Mitchell confirmed that he had $60 bags of crack cocaine. The HPD provided the CI with $60 and monitored his movement from the police vehicle to 4706 Towle. The police continued to monitor the CI inside 4706 Towle using a listening device. At the conclusion of the buy, HPD recovered a clear plastic baggie containing crack cocaine. The CI then identified Mitchell as the seller via photograph. The totality of these circumstances clearly demonstrates that probable cause supports the search warrant.

### B.     Particularity of the Warrant

Mitchell also complains that the warrant is faulty because "it does not describe with particularity the place to be searched in that it does not state the specific apartment within 4706 Towle Avenue . . . to be searched." (Plf. Mot. at ¶ 6). However, the warrant provides for the search of "The residence of 4706 Towle Ave 2nd Floor, Hammond, Lake County, Indiana" (Govt. Ex. B). A reasonable reading of the warrant suggests that there is only one apartment on

the second floor of 4706 Towle.  Indeed, there is no evidence before the Court that more than one apartment is located on the second floor of 4706 Towle.   The defendant has not submitted an affidavit or even argued in his brief that multiple apartments exist on the second floor.  Accordingly, we find that the warrant sufficiently described the area to be searched as the second floor of 4706 Towle.

**II.     The Good-Faith Exception to the Exclusionary Rule**

Finally, we note that even if the warrant were insufficient, the officers were acting in good faith when they executed the search warrant on the second floor apartment of 4706 Towle.  Suppression of evidence obtained with a faulty warrant is only appropriate "if the officer lacked good faith in relying on an invalidated search warrant."  *Sidwell*, 440 F.3d at 869 (citing *United States v. Leon*, 468 U.S. 897, 920-22 (1984)).  A decision to seek a warrant is prima facie evidence that a police officer was acting in good faith.  *Sidwell*, 440 F.3d at 869.  In order to rebut this prima facie evidence, a defendant must either 1) establish that the magistrate "wholly abandoned his judicial role" or 2) demonstrate that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id*. at 869-870 (internal quotations and citations omitted).

Mitchell does not allege that Hammond City Court Judge Harkin abandoned his neutral role.  Instead, he argues that HPD did not exercise reasonable professional judgment by conducting the controlled buy without first searching the CI.  We disagree.  As explained above, HPD received three tips about drug dealing at 4706 Towle, HPD monitored a phone call in which Mitchell confirmed that he had "G" for sale, and HPD conducted a properly controlled buy of narcotics from Mitchell at the second floor apartment at 4706 Towle.  The Court is

convinced that HPD acted in objective good faith when they relied on the facially valid search warrant and discovered drugs and drug paraphernalia inside Mitchell's apartment.  Here, even if the affidavit does fall short of providing the necessary details to establish probable cause, it is not plainly deficient on its face.

## CONCLUSION

For the foregoing reasons, defendant Chadd Lamarr Mitchell's Motion to Suppress [Doc. 19] is hereby **DENIED**.  All dates in this matter are hereby **REAFFIRMED**.

**SO ORDERED.**

ENTERED: April 17, 2006

                              s/ Philip P. Simon
                              PHILIP P. SIMON, JUDGE
                              UNITED STATES DISTRICT COURT